NO. 5:11-HC-2239-F

| | |
|---|---|
| RASHAAN ALI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  ORDER |
| | ) |
| ROBERT JONES, Superintendent, | ) |
| Pasquotank Correctional Inst., | ) |
| | ) |
| Respondent. | ) |

This matter arises from the petition for writ of habeas corpus [D.E. # 1], pursuant to 28

U.S.C. § 2254, filed by petitioner Rashaan Ali. Petitioner is a state inmate under sentence for a

"conviction for first degree murder." State v. Ali, 206 N.C. App. 762, 699 S.E.2d 142, 2010 WL

3466903 *1 (N.C. Ct. App. Sept. 7, 2010) (unpublished table decision), pet. for dis. rev. den., 706

S.E.2d 230 (N.C. Feb. 3, 2011). Presently before the court are respondent's motion for summary

judgment [D.E. # 6] and petitioner's response [D.E. # 9]. For the reasons that follow, the court

orders that the motion for summary judgment will be granted and the petition dismissed.

## STATEMENT OF THE CASE

Ali was convicted in the Superior Court of Wake County on October 27, 2008. Pet. [D.E.

# 1] 1. The North Carolina Court of Appeals described the substantive and procedural facts

surrounding petitioner's conviction and sentence as follows:

The State's evidence tended to show that around the end of April 2007 Jesus
Barrera was holding $60,000 to $69,000 for Francisco Mejia and Manuel Arias

1

[FN1]. Mr. Barrera testified that after receiving this large amount of money he wanted [to] take it and return to Mexico. However, Mr. Barrera did not go to Mexico with the money but had his brothers return at least a portion of it to Mr. Mejia and Mr. Arias.

> [FN1. Mr. Barrera referred to Mr. Mejia and Mr. Arias collectively as "the Columbian[,]" even though Mr. Arias was the only one that was from Columbia. Mr. Mejia was also known as and referred to by other witnesses as "El Patchi."]

On 1 May 2007, Mr. Barrera and Fredi Arroyo went to the apartment of Milagros Ortega on 4401 Green Road in Raleigh, North Carolina. While at the apartment Omar Sandoval dropped by to visit Ms. Ortega and saw Mr. Barrera at the apartment. Around 9 p.m. there was a knock at the door. Ms. Ortega answered the door and it was Mr. Mejia, whom she identified as "El Patchi." Mr. Mejia walked into the apartment and pointed out Mr. Barrera, who was sitting in the living room. Then a man rushed into the apartment, pointing a gun at Mr. Barrera; he was described as African American, muscular, bald, with a beard, and wearing a white t-shirt and was identified at trial as defendant. Mr. Barrera grabbed at the gun in defendant's hand and they began struggling in the middle of the living room. Ms. Ortega's sister, Martha Ortega testified that during this struggle between defendant and Mr. Barrera, she saw defendant's gun fire one shot, hitting Milagros Ortega's thirteen-year-old daughter Gelnirys "Haneedy" Ortega between the eyes. As Mr. Barrera was struggling with defendant, he could see a second African American man, "skinny" with dreadlocks, standing in the doorway holding a gun. Evidence was presented at trial that at the time of the incident, Ian Wattley "co-defendant Wattley" had "cornrows" in his hair. Ms. Ortega was also shot in the neck as she grabbed for her two-year-old son Yandel Ortega who had been knocked down during the struggle between defendant and Mr. Barrera. Mr. Barrera stated that defendant stopped wrestling with him when he realized that Haneedy had been shot.

At the scene, police discovered one 9mm shell casing at the entrance of the apartment and one .380 caliber shell casing on the floor near the kitchen area. Police also found one bullet on the floor at the scene and recovered another bullet at the bottom of a wall, lodged between a baseboard and the carpet. Dr. John D. Butts, the Chief Medical Examiner in Chapel Hill, NC, performed the autopsy on Haneedy Ortega. It was Dr. Butt's medical opinion that Haneedy Ortega died as the result of a gunshot wound to the inner corner of her right eye, which resulted in an exit wound in the back of her head.

Shawn Taylor testified that he lived in Augusta, Georgia but ever since 2003 he had visited Raleigh two or three times a month to purchase and sell marijuana. Around the end of April 2007, Mr. Taylor was in Raleigh with co-defendant Wattley

2

and they had met with defendant at a motel in Raleigh. Mr. Taylor also met with Mr. Arias to buy some marijuana. At some point defendant, Mr. Taylor, and co-defendant Wattley went to get something to eat at the Cookout restaurant on Capital Boulevard; while at Cookout, Mr. Taylor received a call from Mr. Arias instructing him to go to the Food Lion parking lot on Capital Boulevard in Raleigh. At Food Lion, Mr. Taylor, defendant, and co-defendant Wattley met Mr. Mejia and Mr. Sandoval and followed them to an apartment complex on Green Road about five minutes from the Food Lion, arriving around 8:05 or 8:10 p.m. After Mr. Taylor backed his car into a parking space at the apartment complex, Mr. Mejia walked up to Mr. Taylor's car and laid a gun in the back seat of the car next to defendant. Mr. Taylor, defendant, and co-defendant Wattley got out of the car with Mr. Mejia and Mr. Sandoval. Eventually, Mr. Taylor got back in his car because he did not want to "be involved with whatever might have been going on[.]" Mr. Taylor testified that it was his "personal opinion" that they were at the apartment complex to intimidate someone to get Mr. Mejia's money. Mr. Taylor stated that Mr. Mejia was "jumpy" and repeating something "about a guy and some money[,]" but he "couldn't really understand him because he talked[ed] fast." Co-defendant Wattley also got back in the car with Mr. Taylor. Defendant, Mr. Mejia and Mr. Sandoval walked away towards the apartments. At some point, Mr. Taylor told codefendant Wattley to go check on defendant to see "what was taking so long [,]" and co-defendant Wattley got out of the car and walked off. Mr. Taylor then heard a gunshot and commotion at the corner of the parking lot. Co-defendant Wattley and defendant returned to the car and they all left the apartment complex. The next morning Mr. Taylor took defendant to New Jersey and then returned to Georgia with co-defendant Wattley, dropped him off, and went back home. Mr. Taylor later learned that he was wanted by the Raleigh Police Department in connection with his involvement in the events of 1 May 2007 and turned himself in around 12 May 2007. As part of a 9 January 2008 plea agreement, Mr. Taylor pled guilty to accessory after the fact to robbery with a dangerous weapon in connection with his involvement in these events.

On 26 June 2007, defendant was indicted for one count of first degree murder in the death of Gelnirys "Haneedy" Ortega. Defendant was tried during the 27 October 2008 Criminal Session of Superior Court, Wake County before the Honorable R. Allen Baddour, Jr. Defendant's trial was joined with that of co-defendant, Ian Wattley. Defendant did not present any evidence at trial. Codefendant Wattley also did not present any evidence at trial. On 10 November 2008, a jury found defendant guilty of first degree murder based on the predicate crime of felony breaking and entering with the intent to commit extortion. Defendant was sentenced to life in prison without parole. Defendant gave notice of appeal in open court.

Ali, 2010 WL 3466903 at *1-*3.

3

Petitioner appealed to the North Carolina Court of Appeals, arguing that he "was prejudiced by the trial court's jury selection procedure," "the trial court erred in allowing lay witness Shawn Taylor's testimony," and "the trial court erred in denying defendant's motion to dismiss and his motion to set aside the verdict." Id. at *1. The Court of Appeals found no error and affirmed the conviction and sentence. Id. at *9. On October 11, 2010, petitioner filed a notice of appeal and a petition for discretionary review with the North Carolina Supreme Court, both of which were denied by the Court on February 3, 2011. State v. Ali, 706 S.E.2d 230 (N.C. 2011).

On August 16, 2011, petitioner filed a motion for appropriate relief ("MAR") in the Superior Court of Wake County, which was summarily denied on August 19, 2011. See Order Denying Motion for Relief, ex. to Pet. [D.E. # 1-1]. On October 17, 2011, petitioner filed a petition for writ of certiorari review in the North Carolina Court of Appeals, which was denied on November 2, 2011. See Order, id.

On December 6, 2011, at the earliest, petitioner filed the instant petition for writ of habeas corpus. On May 10, 2012, respondent filed his motion for summary judgment and supporting memorandum with exhibits. On May 29, 2012, petitioner filed his response. The matter is now ripe for ruling.

## DISCUSSION

I.    Standard of Review

       A.    Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

4

The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Section 2254(d)

To the extent petitioner's claims were decided on the merits in the state court, the court's review is governed by 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104, 132, 110 Stat. 1214 (1996). Section 2254(d) provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable

5

facts." Id. at 412-13. A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Likewise, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. __, __, 130 S.Ct. 841, 849 (2010). See also Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010) ("For a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable.") (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)). Thus, while "deference [in the habeas context] does not imply abandonment or abdication of judicial review" and does not "preclude relief," Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), the deferential standard imposed by § 2254(d), as to both legal conclusions and factual determinations by the state courts, erects a substantial bar for state inmates seeking habeas relief in federal court.[1]

---

[1]     In this vein, the Supreme Court recently observed as follows:

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no probability fairminded jurists could disagree that the state court's decision conflicts

(continued...)

The statute "does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000). If the state court did not articulate the rationale underlying its adjudication, a federal habeas court must examine the record and the clearly established Supreme Court precedent to determine whether the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law. Id. at 158. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at __, 131 S.Ct. at 784-85. Finally, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Fisher v. Lee, 215 F.3d 438, 445 (4th Cir. 2000).

Only after a petitioner establishes that the state court's adjudication of his claims was "contrary to" or an "unreasonable application of" clearly established federal law, or was "based on an unreasonable determination of the facts in light of the evidence," may a federal court proceed to review a state court judgment independently to determine whether habeas relief is warranted. Rose v. Lee, 252 F.3d 676, 689-90 (4th Cir. 2001). See also Frazer v. South Carolina, 430 F.3d 696, 718

---

¹(...continued)

with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. __, __, 131 S.Ct. 770, 786-87 (2011).

(4th Cir. 2005) ("Because the state court's decision in this case was both contrary to and involved an unreasonable application of clearly established federal law, the district court properly reviewed Frazier's claim *de novo*."); Lynch v. Polk, 204 F. App'x 167, 170 (4th Cir. 2006) (unpublished decision) ("If a legal or factual error of the degree specified in § 2254(d)(1) or (d)(2) occurred, then a federal court has the obligation to conduct an independent review of the petitioner's claims to determine whether the issuance of a writ is warranted.").

C.    Procedural Default

In addition to arguing that petitioner's claims cannot survive § 2254(d) review where it is applicable, respondent also asserts that petitioner has procedurally defaulted his claims because he failed to preserve some claims for appellate review, and because he failed to fully exhaust others.

> The doctrine of procedural default provides that "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183 (4th Cir.2000). A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

McNeil v. Polk, 476 F.3d 206, 211 (4th Cir. 2007).

In addition to applicable state law procedural bars, respondent asserts that certain of petitioner's claims are procedurally defaulted due to his failure to exhaust such claims by presenting them in his petition for discretionary review to the North Carolina Supreme Court during his direct appeal. A prisoner is required to exhaust remedies available to him in state court before he files a

8

writ of habeas corpus in federal court. See § 2254(b)(1)(A). The Fourth Circuit has described the contours of this exhaustion requirement as follows:

> Of course, it is true that "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); see also Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.1998). To provide the state with this opportunity, "the prisoner must 'fairly present' his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim." Reese, 541 U.S. at 29; see also Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.1997). The habeas petitioner must raise his claim before every available state court, including those courts [ ] whose review is discretionary. O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999).

Jones v. Sussex I State Prison, 591 F.3d 707, 712-13 (4th Cir. 2010). A habeas petitioner's failure to exhaust his remedies in state court may preclude review of his claims in federal court. "A procedural default . . . occurs when a habeas petitioner fails to exhaust available remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Breard, 134 F.3d at 619 (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

In North Carolina, a non-capital defendant may satisfy the exhaustion requirement for federal habeas purposes by directly appealing his conviction to the North Carolina Court of Appeals and, if unsuccessful in that venue, petitioning the Supreme Court of North Carolina for discretionary review pursuant to N.C.G.S. § 7A-31. In the post-conviction context, a petitioner in North Carolina may exhaust his federal claims by filing a MAR in the appropriate circuit court and then filing a petition for certiorari review of any adverse decision with the Court of Appeals pursuant to N.C.G.S. § 15A-1422. Because "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner," Breard, 134 F.3d at 619, absent a showing by petitioner that his instant federal claims

9

followed along one of these two tracks to completion of review in the state courts, his claims are subject to procedural default.

In general, a "procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." Wolfe v. Johnson, 565 F.3d 140, 158 n.27 (4th Cir. 2009) (internal quotations and citations omitted). In order for the alleged ineffective assistance of petitioner's counsel to provide cause to excuse any procedural default, petitioner must not have defaulted on the independent and overlying claim of ineffective assistance of counsel and counsel's assistance must have been constitutionally defective. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

II.    Petitioner's Claims

Petitioner appears to raise the following claims in his federal habeas petition: 1) "the trial court committed error in the jury selection procedures;" 2) "the court erred by allowing a participant in the crime to testify to his surmise;" 3) "the court erred in denying [his] motion to dismiss the first-degree murder charge;" 4) "trial counsel was ineffective in not preserving constitutional errors for appeal;" 5) his "conviction was obtained due to the ineffective assistance of appellate counsel;" 6) "the trial court erred in allowing repetitive photos to be shown to the jury;" 7) his "conviction was obtained through the perjured testimony of Shawn Taylor;" and 8) his "conviction was obtained due to insufficient evidence." Pet. [D.E. # 1] 5-17.

10

III.  Analysis

Respondent contends that petitioner's claims are procedurally defaulted, do not satisfy the deferential standard enunciated in § 2254(d) where applicable, and are otherwise lacking in merit. Resp.'s Supp. Mem. [D.E. # 8] 4-29. The court will address each of petitioner's claims in turn.

A.  Ground One

Petitioner's first claim is that the "court committed error in the jury selection procedures." Pet. 5. In support, he alleges as follows: "Instead of following the statutorily mandated jury selection procedure, the judge skipped over Mr. Ali's co-defendant four times, resulting in an unconstitutional advantage to the co-defendant. I was forced to exhaust my peremptory challenges before co-defendant (Ian Wattley)." Id. The precise nature of petitioner's claim is unclear. Petitioner's apparent complaint that the trial court failed to abide by North Carolina's "statutorily mandated jury selection procedure" is unavailing to the extent he is complaining about the state court's failure to properly apply or follow non-constitutional state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . . We emphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations omitted). Nor is there any claim in habeas corpus for a co-defendant's perceived "unconstitutional advantage" in jury selection procedures. Thus, Ground One is viable as a claim for relief only to the extent petitioner is complaining that the trial court's jury selection procedures offended his federal constitutional right to due process and a fair trial.

On direct appeal, the North Carolina Court of Appeals determined that petitioner had waived any federal constitutional claim concerning the trial court's jury selection procedures because petitioner did not raise such arguments before the trial court. See Ali, 2010 WL 3466903 *3.

11

Respondent therefore first contends that Ground One is procedurally defaulted because the state court's determination "constitutes an independent and adequate state procedural bar." Resp.'s Supp. Mem. [D.E. # 8] 5. Petitioner has alleged that the ineffective assistance of counsel provides "cause" for his procedural default of this claim. Pet'r's Resp. [D.E. # 9] 4-5. Thus, as set forth above, petitioner's overlying claims of ineffective assistance must be exhausted and themselves meritorious in order to provide "cause" for his procedural default.

Petitioner raised his claims that trial counsel was ineffective in failing to preserve his federal constitutional objection to the trial court's jury selection procedures, and that appellate counsel was ineffective for failing to allege trial counsel's ineffectiveness, in his MAR. See MAR, ex. 9 to Resp.'s Supp. Mem. [D.E. # 8-11] 14. The MAR court summarily denied the ineffective assistance claims and petitioner sought certiorari review of that decision. Thus, petitioner's overlying ineffective assistance claims are not themselves defaulted and this court must assess their merits to determine whether petitioner has shown "cause" for his default of his underlying due process claim concerning the trial court's jury selection procedures. It is therefore appropriate at this juncture to set forth the standards governing the court's analysis of a claim of ineffective assistance of counsel. The United States Court of Appeals for the Fourth Circuit recently described these standards as follows:

> To demonstrate ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Regarding the first prong, a "deficient" performance is one that falls "below an objective standard of reasonableness." Id. at 511. Petitioner must show "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." Harrington, [562 U.S. at __], 131 S.Ct. at 787 (internal quotations marks omitted). See also Strickland v. Washington, 466 U.S. 668, 687 (1984) ("First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made

12

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.").

> [A court's] deferential assessment of counsel's performance must "include [] a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time . . . ." Wiggins, 539 U.S. at 523 (internal quotation marks omitted). Further, we must resist the temptation to "second-guess counsel's assistance after conviction or adverse sentence" and make "every effort . . . to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Indeed, we must review with "scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Harrington, [562 U.S. at __], 131 S.Ct. at 788 (internal quotation marks omitted).

Decastro v. Branker, 642 F.3d 442, 450 (4th Cir. 2011).

As to the second Strickland prong, prejudice, petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Thus, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This showing "requires a substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S.__, __, 131 S.Ct. 1388, 1403 (2011) (internal quotations omitted). "The totality of the evidence before the judge or jury must be considered in making this determination." Williams v. Ozmint, 494 F.3d 478, 484 (4th Cir. 2007) (internal quotation marks omitted).

The petition fails to explicitly state why trial counsel's performance during jury selection was deficient or how it prejudiced the outcome of petitioner's trial. In his MAR, petitioner explained his theory of how he was prejudiced by counsel's failure to object to the trial court's jury selection procedures: "It would have affected me because after I exhausted my peremptory challenges, Ian

13

Wattley was able to change up the composition and I was out of challenges, so the composition of the jury leaned more in Ian Wattley's favor or to his liking, and subsequently I was deprived of due process of law, to a fair trial, to jury trial, and to a unanimous verdict, and the error did cause the jury to bring back the more severe verdict of first-degree murder against me." MAR, ex. 9 to Resp.'s Supp. Mem. [D.E. # 8-11] 16-17. Petitioner further argues that counsel's failure to preserve this issue for appeal prejudiced his appeal because the Court of Appeals did not consider his federal constitutional claim and ultimately denied his appeal.

On direct appeal, the North Carolina Court of Appeals acknowledged that the trial court failed to adhere to North Carolina's jury selection procedures.

> The record indicates that the trial court failed to follow the procedural mandates of N.C. Gen.Stat. § 15A-1214 during jury selection. On three separate instances, following the State's indication that it was satisfied with the panel of twelve potential jurors and defendant's counsel's questioning of jurors, challenges for cause, or use of peremptory challenges to remove some of those jurors, the trial court in error called replacement jurors without first giving counsel for co-defendant Wattley an opportunity to examine the remaining prospective jurors.

Ali, 2010 WL 3466903 at *4. Petitioner argued that this oversight by the trial court permitted Wattley to utilize his peremptory challenges on jurors exhibiting "less blatant bias." Id. Importantly, for purposes of evaluating the instant claim, petitioner is not complaining that the court unlawfully excluded certain persons or classes of persons from the jury venire, or that any party exercised challenges in a discriminatory manner. Petitioner also is not alleging that he was somehow denied his allotted number of peremptory challenges, or that he was forced to use a peremptory challenge on a juror who otherwise should have been removed for cause. Rather, petitioner is simply complaining that, vis a vis his co-defendant, he was at a disadvantage because he was required to exhaust some of his peremptory challenges before his co-defendant. Petitioner presents no authority

14

for his proposition that this circumstance, even if true, somehow violated his constitutional rights to due process and a fair trial, or that counsel was constitutionally ineffective for failing to object and preserve this issue for appeal.

The Fourth Circuit has previously recognized that "[t]he right to peremptory strikes is not a constitutional one . . . But it is a right of such significance that denial or substantial impairment of the right constitutes per se reversible error." United States v. Ricks, 776 F.2d 455, 461 (4th Cir. 1985). The court fails to see how petitioner's ability to exercise his peremptory strikes was "substantially impaired" merely because the trial court's error in applying North Carolina jury selection procedures required plaintiff to exercise at most two of his peremptory challenges before his co-defendant. North Carolina law provides a defendant in a noncapital case with six peremptory challenges plus "one peremptory challenge for each alternate juror." See N.C.G.S. § 15A-1127(b)(1) & (c). Petitioner exhausted all six of his peremptory challenges during jury selection, plus two more when choosing alternate jurors. See Trial Tr. (ex. 14 to Resp.'s Supp. Brief) at 215 (Ali peremptorily challenges 4 prospective jurors), 326 (Ali peremptorily challenges one prospective juror), 380 (Ali peremptorily challenges one prospective juror), 498 (Ali peremptorily challenges one prospective alternate juror), and 510 (Ali peremptorily challenges one prospective alternate juror). By comparison, petitioner's co-defendant, Wattley, utilized only five of his initial peremptory challenges and none of his challenges for alternate jurors. See id. at 341, 388, 404, and 520.

Although each of the prospective jurors peremptorily challenged by Wattley necessarily had been "passed" by petitioner, it does not follow that the results of jury selection would have differed if the trial judge had adhered to North Carolina's procedures. For example, petitioner utilized his first four peremptory challenges on prospective jurors numbers one, three, five, and nine. Id. at 215.

15

Petitioner then utilized his fifth challenge on one of the replacements for number nine. Id. at 326. After petitioner then passed the panel of twelve, Wattley utilized three challenges on prospective jurors at seat numbers two, four, and seven. Id. at 341. Had the trial judge followed the correct procedures, Wattley would have been required to make these challenges before petitioner used his fifth peremptory challenge on the replacement for prospective juror number nine. However, because Wattley initially challenged three prospective jurors from slots never challenged by petitioner, it is not clear that, even if Wattley had been required to proceed at the correct time, he would not have struck the same prospective jurors anyway. Thus, petitioner arguably was required to employ only one peremptory challenge out-of-time–his fifth, in which he challenged a replacement for one of his four initial challenges–that he might not have been required to employ had the judge correctly followed North Carolina's procedures.[2]

Petitioner simply cannot show that the trial court's irregular jury selection process "substantially impaired" his ability to exercise his peremptory challenges, much less that counsel was deficient in failing to object to the procedures or that counsel's failure somehow prejudiced the outcome of petitioner's trial or appeal.[3] As such, petitioner's overlying claims of ineffective

---

[2] Petitioner's sixth and final peremptory challenge was used on a replacement for the prospective juror in slot number seven, after Wattley had utilized one of his initial three peremptory challenges on that prospective juror's predecessor. See Trial Tr. 380.

[3] Indeed, in resolving petitioner's state law claims surrounding jury selection on direct appeal, the North Carolina Court of Appeals was required to make its own similar findings about prejudice, i.e., whether "'a reasonable probability exists that, had the error not been committed, a different result would have been reached at trial.'" See Ali, 2010 WL 3466903 *4-*5 (quoting State v. Garcia, 358 N.C. 382, 407, 597 S.E.2d 724, 743 (N.C. 2004)). Based upon its review, the Court of Appeals found that petitioner had failed to demonstrate such prejudice because petitioner failed to demonstrate any bias on the part of any jurors who were seated after he exhausted his peremptory challenges. Id. at *5. Indeed, as the court noted, petitioner did not even challenge for cause on bias
(continued...)

16

assistance of trial counsel (in failing to preserve the issue for appeal) and appellate counsel (in failing to allege trial counsel's ineffectiveness on direct appeal) are without merit. Accordingly, the ineffective assistance claims cannot provide "cause" for petitioner's default of his underlying claim of trial court error. Respondent is entitled to summary judgment on Ground One.

B.     Ground Two

In Ground Two, petitioner claims that the "court erred by allowing a participant to testify to his surmise!" Pet. 6. In support, he alleges as follows: "Lay persons are normally not permitted to express an opinion on the intention of defendants; the court disregarded Mr. Taylor's testimony that his opinion was not based on what he had been told would happen; Shawn Taylor's testimony was prejudicial to me and mislead the jurors." Id. at 6-7. Respondent argues that Ground Two "is waived, procedurally barred, without merit under the highly deferential standards of review contained in 2254(d) and (e), and harmless under Brecht[ v. Abrahamson, 507 U.S. 619, 637 (1993)]." Resp.'s Supp. Brief [D.E. # 15].

The court must first clarify the basis of petitioner's claim. To the extent petitioner merely is complaining about the trial court's admission of Taylor's testimony as an evidentiary matter, the claim is not cognizable in federal habeas corpus. See Barbe v. McBride, 521 F.3d 443, 452-53 (4th Cir. 2008) (citations and quotations omitted) ("Importantly, in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under

_____

3(...continued)

grounds either of the two prospective jurors who were seated after he exhausted his peremptory challenges. Id. To the extent this determination, albeit in the context of state law, constitutes a judgment on the merits about whether petitioner suffered constitutionally cognizable prejudice due to counsel's purported error, it is not contrary to or an unreasonable application of Supreme Court precedent, nor is it an unreasonable determination in light of the facts before the Court of Appeals.

state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal questions is presented."). Thus, to the extent Ground Two alleges a viable claim in federal habeas corpus, it can only be concerned with whether the admission of this portion of Taylor's testimony resulted in a denial of a fair trial.

As asserted by respondent, the North Carolina Court of Appeals expressly refused to consider whether the admission of Taylor's testimony violated due process due to counsel's failure to object on that narrow basis at trial. See Ali, 2010 WL 3466903 *7. Furthermore, as also asserted by respondent, petitioner did not raise this claim on discretionary review with the North Carolina Supreme Court, as is required to exhaust the claim. See Pet'r's Petition for Discretionary Review, ex. 7 to Resp.'s Supp. Brief [D.E. # 8-9]. Thus, petitioner's claim of trial court error is unexhausted and, were he to return to state court in order to exhaust this claim through the filing of a MAR, it would be procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3). Thus, the claim is procedurally defaulted and may not be considered in a petition for federal habeas corpus.[4] Respondent is entitled to summary judgment on Ground Two.

C. Ground Three

---

[4] To the extent petitioner argues that ineffective assistance of trial or appellate counsel provides "cause" to excuse his default, such claim is without merit. First, as will be discussed below in conjunction with the court's disposition of petitioner's Ground Four, his claim that trial counsel was ineffective for failing to object is without merit. Second, to the extent petitioner claims that appellate counsel was ineffective in failing to exhaust this claim by including it in his PDR to the North Carolina Supreme Court, the court notes that a defendant has no constitutional right to counsel when seeking discretionary review of a conviction in a state appellate court. See Wainright v. Torna, 455 U.S. 586, 587-88 (1982). Consequently, any claim that counsel was ineffective for failing to include this claim in the PDR cannot provide "cause" to excuse petitioner's default for failing to exhaust the claim.

18

In Ground Three, petitioner claims "the court erred in denying [his] motion to dismiss the first-degree murder charge." Pet. 8. In support, he argues "evidence solicited at trial never directly without a doubt needled me as the shooter whom fired the bullet that killed Geinirys Herrara and no weapon was even found that tied me to the murder. My co-defendant was found guilty of involuntary manslaughter." Id. Respondent argues that Ground Three is barred from review because although petitioner raised the claim on direct appeal, he failed to raise it in his PDR to the North Carolina Supreme Court. Resp.'s Supp. Brief [D.E. # 8] 15. Respondent also contends that the North Carolina Court of Appeals' decision denying this claim on direct appeal must be upheld pursuant to § 2254(d). Id. at 18.

It is indisputable that petitioner did not exhaust this claim by including it in his PDR to the North Carolina Supreme Court on direct appeal. See Pet'r's Pet. for Dis. Rev., ex. 7 to Resp.'s Supp. Brief [D.E. # 8-9]. Thus, the claim is unexhausted and is barred from review in federal habeas corpus. Likewise, any contention that petitioner's appellate counsel was ineffective in failing to include the claim in his PDR, such that "cause" exists to excuse the failure to exhaust, is unavailing because, for the reasons stated in the discussion of Ground Two, *supra*, petitioner had no constitutional right to counsel in pursing a discretionary appeal to the North Carolina Supreme Court. Thus, for the reasons stated previously, this claim is unexhausted and is procedurally barred from review in federal habeas corpus. Respondent is entitled to summary judgment on Ground Three.[5]

---

[5] In the alternative, the court agrees with respondent that this claim fails pursuant to § 2254(d). On its face, petitioner's claim clearly amounts to nothing more than a complaint about the jury's allocation of guilt between petitioner and Wattley based upon the evidence before it. However, on direct appeal, the North Carolina Court of Appeals surveyed the evidence introduced at trial and determined that the "evidence supports a reasonable inference that defendant fatally shot Haneedy Ortega during his attempt to extort money from Mr. Barrera." Ali, 2010 WL 3466903 *8. (continued...)

19

## D. Ground Four

In Ground Four, petitioner claims that "trial counsel was ineffective in not preserving constitutional errors for appeal." Pet. 10. In support, he alleges that "the Court of Appeals denied my appeal, in part because my trial lawyer failed to preserve constitutional issues for appeal. Counsel's performance (considering the appellate opinion) falls below the standard shown in Strickland v. Washington. Prejudice was obvious (I lost my appeal)." Id. Petitioner does not identify specifically which issues counsel was constitutionally ineffective in failing to preserve for appeal. Upon review of the Court of Appeals' decision, the only constitutional issues raised on appeal which were not considered by the Court of Appeals due to counsel's failure to preserve them were petitioner's claim concerning the due process implications of the trial court's jury selection procedures, see Ali, 2010 WL 3466903 *3, his claim about the trial court's admission of Shawn Taylor's "opinion" evidence, see id. at *7, and his claim that his due process rights were violated by the trial court's "'[a]llowing the jury to deal with the problem of scarce evidence by compromising on the distribution of verdicts between two joined defendants[.]" Id. at *9. The court will address each of these three sub-claims in turn.

        1.     Counsel's failure to preserve petitioner's due process claim concerning the trial court's irregular jury selection procedures.

---

[5](...continued)

In resolving a constitutional due process claim that there is insufficient evidence to support a conviction, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The North Carolina Court of Appeals' determination is not contrary to or an unreasonable application of Supreme Court precedent, nor is it based upon an unreasonable determination in light of the facts before it.

Petitioner raised this ineffective assistance claim in his MAR. See MAR, ex. 9 to Resp.'s Supp. Brief [D.E. # 8-11] 14. However, as discussed *supra*, petitioner has not demonstrated that counsel's failure to object to the trial court's errors in following North Carolina jury selection procedures"substantially impaired" his right to exercise his peremptory challenges. Thus, petitioner cannot show the requisite prejudice to sustain a claim of ineffective assistance of counsel. As such, the state court's finding that petitioner's MAR "fails to set forth any basis in law or fact which would entitle" him to relief is neither contrary to or an unreasonable application of Supreme Court precedent, and nor is it an unreasonable determination in light of the facts before the state court.[6]

---

[6] In Harrington, the Supreme Court discussed the interplay of the Strickland ineffectiveness standard and the deferential review standard of AEDPA, and described the very high burden imposed by § 2254(d) when a habeas petitioner alleges ineffective assistance of counsel.

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, *supra*, at 410. A state court must be granted deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> . . .
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles[ v. Mirzayance, 556 U.S. __, __, 129 S.Ct. 1411,1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at __, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel

(continued...)

21

Respondent is entitled to summary judgment on this component of petitioner's ineffective assistance of trial counsel claim.

> 2. Counsel's failure to preserve a due process objection to the admission of Shawn Taylor's opinion testimony.

As noted above, petitioner asserts that the trial court erred in admitting, and his counsel erred in failing to object to such admission on due process grounds, Shawn Taylor's testimony about his "opinion on the intention of defendants[.]" Pet. 6. In his direct appeal, petitioner argued that it was error for the court to allow Taylor to testify as to his opinion that petitioner committed a breaking and entering of the subject apartment with the intent to retrieve money, i.e., to commit extortion, while also being allowed to testify that he formed this opinion without being directly informed of this intention by co-defendants, thereby avoiding exclusion of this essential evidence on state law hearsay grounds. Defendant-Appellant's Brief at 20-32, ex. 4 to Resp.'s Supp. Brief [D.E. # 8-6]. Although counsel vigorously objected to Taylor's testimony as hearsay, see Trial Tr. 972-73, and filed a motion for mistrial, id. at 986, counsel did not specifically articulate a federal constitutional due process objection to admission of the testimony.[7]

---

[6](...continued)
satisfied Strickland's deferential standard.

Harrington, 562 U.S. at __, 131 S.Ct. at 785, 788 (emphasis in original).

[7] The motion for mistrial filed by counsel after recess on the first day of Taylor's testimony did raise a federal constitutional objection. Specifically, counsel argued that the admission of "a lay opinion based upon hearsay, even in part, violates the Defendant's Sixth Amendment right to Confront the witnesses against him." Motion for Mistrial, Record on Appeal, ex. 3 to Resp.'s Supp. Brief [D.E. # 8-4] 57. Counsel did not specifically argue, as did appellate counsel, that admission of Taylor's testimony "was prejudicial to Rashaan Ali's right to a fair determination of his guilt or (continued...)

22

In order for counsel's failure to preserve a constitutional objection to Taylor's purported

opinion testimony to constitute ineffective assistance of counsel, the court's admission of the

testimony must have "so infused the trial with unfairness as to deny due process of law," Estelle, 502

U.S. at 75 (quotation omitted), that counsel's failure to raise that specific objection was deficient and

prejudiced the outcome of petitioner's trial. However, judicious consideration of Taylor's testimony,

and appropriate deference to the state court's factual findings regarding the testimony, dispenses with

any notion that counsel's omission so infected petitioner's trial with unfairness as to render it in

violation of due process. On direct appeal, the North Carolina Court of Appeals summarized the

pertinent part of Taylor's testimony to which petitioner objected:

> Defendant points to the following testimony from witness Mr. Taylor as
> impermissible opinion regarding defendant's intentions on the day in question:
>
>> State: Mr. Taylor ... you testified there were five people outside in that
>> parking lot?
>> Mr. Taylor: Uh-huh, yes.
>> Q: And you all met at the Food Lion a few minutes before?
>> A: Yes.
>> Q: And [Mr. Mejia] drove the car, and you followed?
>> A: Yes.
>> Q: And after this gun getting passed back and forth, you returned and at this
>> time spent in the parking lot, you returned to your car?

---

⁷(...continued)

innocence and to his fundamental constitutional right to due process and a fair trial." Defendant-
Appellant's Brief at 31-32, ex. 4 to Resp.'s Supp. Brief [D.E. # 8-6]. Although the North Carolina
Court of Appeals apparently determined that counsel's interjection of a Confrontation Clause
objection to Taylor's testimony was insufficient to preserve the constitutional claims articulated on
appeal, the court notes that the Fourth Circuit has previously found that a Confrontation Clause
objection to the admission of hearsay evidence at a federal criminal trial "sufficiently preserved [a]
due process argument on appeal." United States v. Crawford, 288 F.App'x 903, 905 (4th Cir. 2008).
Because the court must ultimately examine the merits of petitioner's underlying due process claim
in conjunction with deciding his overlying ineffective assistance claim, the court need not determine
whether the tension between these unrelated rulings of the North Carolina Court of Appeals and the
Fourth Circuit warrants additional consideration in this case.

A: Yes.

Q: And why was it you returned to your car, Mr. Taylor?

A: Because I didn't want-didn't want anything have to do with anything that was going on.

Trial Court: Sir, if you'll speak up, please.

A: I didn't want to have anything to do with what was going on.

Q: Mr. Taylor, in your opinion, what was about to happen?

Defense Counsel: Objection, speculation and hearsay.

Trial Court: Overruled.

A: In my opinion, money was about to get retrieved.

Q: Mr. Taylor, in your opinion, why were you there? Why-why was this group of folks there?

A: For intimidation purposes.

Q: To do what?

A: Help-help [Mr. Mejia] get the money.

Ali, 2010 WL 3466903 at \*5-\*6. Although the state court addressed petitioner's arguments about this testimony in the context of deciding state law evidentiary issues, the court's findings about the nature and impact of Taylor's testimony is instructive in resolving this court's concern with whether the testimony so infused petitioner's trial with unfairness that counsel was ineffective in failing to object on due process grounds in addition to those he did raise. The Court of Appeals observed as follows:

> In context, Mr. Taylor's testimony expressed his opinion about what he thought was about to happen next and was rationally based on his perceptions and his knowledge of the other individuals. See N.C. Gen.Stat. § 8C-1, Rule 701. Mr. Taylor had previously testified that he knew or was associated with Mr. Arias, Mr. Mejia, defendant, and co-defendant Wattley through his involvement in buying and selling marijuana in Raleigh. Mr. Taylor testified that he, defendant, and co-defendant Wattley followed Mr. Mejia and Mr. Sandoval from the Food Lion to the apartment complex. Mr. Taylor described his observations of the other participants' actions and appearances: going to the apartment, Mr. Mejia bringing a gun to defendant, and that Mr. Mejia was "[r]eal jumpy, edgy." Mr. Taylor assessed the situation based upon all that he knew about the individuals and what he had seen and returned to the car "[b]ecause I didn't want to, you know, be involved with whatever might have been going on, and I didn't know enough to be, you know, sitting there dealing with it." Mr. Taylor further explained that he thought they were at the apartment complex to intimidate someone in order to get Mr. Mejia's money. Mr.

24

Taylor's opinion was rationally based on his observations and his knowledge that the other individuals were involved in the illegal drug trade, that Mr. Mejia handed the gun to defendant, and that Mr. Mejia was jumpy and edgy. Mr. Taylor's testimony was also helpful to the jury to show why Mr. Taylor returned to the car and did not follow the others into the apartment. See N.C. Gen.Stat. § 8C-1, Rule 701.

As to defendant's claims that Mr. Taylor was testifying regarding defendant's intentions, the above-quoted testimony makes no mention of defendant's intent on the evening in question, nor did Mr. Taylor single defendant out or mention him by name. Mr. Taylor also did not make any reference to statements made by Mr. Mejia or Mr. Arias. Rather, in context, Mr. Taylor was explaining what he thought was going to happen next and his actions-getting back in his car-based on his perceptions. It is true that the jury could infer from all of the evidence, including Mr. Taylor's testimony, that defendant intended to extort money from someone, but this was not based upon any hearsay statements by either defendant or any other participant in the crime. Accordingly, we find that the cases cited by defendant in support of this argument inapplicable as they address a lay witness's opinion of another person's intention on a particular occasion. See State v. Hurst, 127 N.C.App. 54, 62-63, 487 S.E.2d 846, 853 (1997) (affirming a trial court's denial of defendant's request to admit a lay witness opinion into evidence as it was "a statement of her opinion that the defendant may not have originally intended to participate in the plan" to rob and kill the victim), cert. denied, 523 U.S. 1031 (1998); State v. Vines, 93 N.C. 493, 496 (1885) (affirming the trial court's refusal to allow a lay witness to testify that he believed the shooting of the victim was an accident). Therefore, we find that the trial court did not abuse its discretion in allowing this testimony.

Id. at *6-*7.

As this passage makes clear, the Court of Appeals viewed Taylor's testimony simply as his expression of his opinion about what the involved individuals were doing, which he based upon a number of factors, including his observations surrounding the meetings with persons he knew to be involved in the drug trade, the exchanging of a firearm, traveling as a group in two vehicles to an apartment, and the demeanor of at least one of the individuals. Moreover, the court also did not view Taylor's testimony as impermissibly expressing an opinion about defendant's intentions, given its finding that Taylor never expressly spoke of defendant's intent or singled him out. Given the state court's findings with regard to the admission of Taylor's testimony, it is evident that the court would

25

have rejected any claim that, despite its appropriateness under state law, Taylor's testimony nevertheless so severely infected petitioner's trial with unfairness that it deprived him of due process. Because there is therefore no reasonable likelihood that petitioner's trial or appeal would have reached a different outcome had counsel lodged a specific due process objection in addition to the state law and Confrontation objections he raised, petitioner cannot show the requisite prejudice to sustain his claim that counsel was ineffective.

Likewise, petitioner's underlying claim that his due process rights were violated is without merit. As an objective matter, Taylor's testimony arguably did tread near the line of impermissible hearsay while enabling the State to introduce key evidence of intent in support of its theory of first degree murder. For that reason, counsel valiantly raised several good points in challenging Taylor's testimony on state law grounds. However, Taylor's testimony that he gleaned the parties' intentions from his ongoing perception of events was not so incredible or prejudicial that its admission "so infused the trial with unfairness as to deny due process of law." Estelle, 502 U.S. at 75 (quotation omitted). Even if it were slightly prejudicial, the Supreme Court has specifically rejected the notion that due process precludes the admission of any and all prejudicial evidence at a state court trial. See Spencer v. State of Texas, 385 U.S. 554, 560-65 (1967). In this case, considering the content and character of Taylor's testimony, as well as other evidence introduced at trial, the court simply cannot conclude that admission of Taylor's testimony violated petitioner's federal due process rights. As such, petitioner cannot show deficient performance or prejudice flowing from counsel's failure to object on due process grounds and his ineffective assistance claim is devoid of merit. Thus, the MAR court's decision rejecting this claim is neither contrary to or an unreasonable application of Supreme Court precedent, and nor is it based upon an unreasonable determination in light of the facts

26

before the state court. Respondent is entitled to summary judgment on this aspect of petitioner's ineffective assistance of trial counsel claim.

        3.      Counsel's failure to preserve a "distribution of verdicts" challenge for appeal.

The final instance in which the North Carolina Court of Appeals determined that trial counsel had failed to raise a constitutional objection which was subsequently raised but deemed waived on appeal concerns his argument that his due process rights were violated by the trial court's "[a]llowing the jury to deal with the problem of scarce evidence by compromising on distribution of verdicts between two joined defendants[.]" Ali, 2010 WL 3466903 at *9 (quotations omitted). Petitioner does not cite to any authority for his proposition that his joinder for trial with his co-defendant violated due process because of the character of the evidence. Nor did petitioner cite any such authority in his brief on direct appeal. See Defendant-Appellant's Brief at 36-37, ex. 4 to Resp.'s Supp. Brief. [D.E. # 8-6]. At best, it simply appears that petitioner is objecting to the jury's determination that, based upon the evidence before it, petitioner is more culpable for the murder of the victim than his co-defendant Wattley. That determination was solely the province of the jury and is not subject to review in federal habeas corpus. Accordingly, because petitioner's underlying due process claim is itself without merit, the MAR court's rejection of his overlying claim that counsel was ineffective in failing to preserve the claim for appellate review is neither contrary to or an unreasonable application of Supreme Court precedent, and nor is it based upon an unreasonable determination in light of the facts before the state court. Respondent is entitled to summary judgment on this aspect of petitioner's ineffective assistance of trial counsel claim.

        E.      Ground Five

In Ground Five of the petition, petitioner claims that his "conviction was obtained due to the

27

ineffective assistance of appellate counsel." Pet. 12. In support, he argues that his "appellate lawyer failed to raise the ineffective assistance of trial counsel for failing to preserve constitutional questions for appellate review and/or for failing to ask the Court of Appeals to review [his] claim under Rule 2 of the N.C. Rules of Appellate procedure." Id. As respondent asserts, it appears that petitioner is challenging only his appellate counsel's failure to argue on appeal that his trial counsel was ineffective for failing to preserve the constitutional "claims" discussed in Ground Four, *supra*. Resp.'s Supp. Brief [D.E. # 8] 23-24. However, as set forth above, the court has found that, in each instance, petitioner's underlying arguments that his constitutional rights were violated is without merit. Consequently, petitioner's claim that trial counsel's failure to raise and preserve certain constitutional objections constituted ineffective assistance is without merit. It follows, therefore, that appellate counsel's failure to raise trial counsel's purported ineffective assistance on these grounds was not itself ineffective assistance, as petitioner cannot show the requisite deficient performance or prejudice to sustain the claim. Likewise, because his claims of constitutional error at trial are without merit, appellate counsel was not ineffective in failing to request the extraordinary measure of review under Rule 2 of the North Carolina Rules of Appellate Procedure, which permits review of issues not preserved for appeal in order to "prevent manifest injustice to a party." N.C. R. App. P. 2. Accordingly, the MAR court's rejection of petitioner's ineffective assistance of appellate counsel claims is neither contrary to or an unreasonable application of Supreme Court precedent, and is not based upon an unreasonable determination of the facts before the state court. Respondent is entitled to summary judgment on petitioner's ineffective assistance of appellate counsel claim.

F.    Ground Six

In Ground Six of his petition, petitioner claims that "the trial court erred in allowing

28

repetitive photos to be shown to the jury." Pet. 13. In support, he argues "the court showed the jury many more pictures of the victim and the crime scene than was needed to get the point, in an attempt to play on the jury's sympathy because evidence was weak and the pictures persuaded the jury that due to the victim's age the crime cannot go unpunished." Id. Petitioner does not provide any legal authority for his argument. He also does not provide any description of the quantity of photographs which were purportedly unconstitutionally admitted at his trial. In his MAR, petitioner appeared less concerned with the number of photographs or their repetitiveness, instead appearing to argue that the photographs exacerbated pressures being exerted on the jury by the trial court's instructions and scheduling of deliberations. See MAR, ex. 9 to Resp.'s Supp. Mem. [D.E. # 8-11] 29-30. In any event, petitioner acknowledged in his MAR that, as a matter of North Carolina evidentiary law, "a photograph of a murder victim may be introduced into evidence to illustrate the testimony of a witness." Id. at 31. Nevertheless, he argued that by introducing multiple photographs of the victim, the State sought to "repeatedly remind the jury of the cruelty of a crime such as the one at bar," thereby

creat[ing] an inference of guilty, because as in this case, it keeps reminding the jury that the victim was an innocent 13 year old child and the defendant done this (whatever is inferred from the pictures) to her. The inference could be anything, from the brutality of the murder to the fatal disturbance of a happy, secure home! Nonetheless, one would have to believe that prejudice and arosal [sic] of error emulated from the introduction of so many photographs in this case.

Id. Even in his MAR, however, petitioner failed to allege specifically how many photos of the victim were entered into evidence, what a permissible number would have been, and a plausible theory as to how the photos prejudiced his case. As an exhibit to the MAR titled "Photographs entered into evidence," petitioner provided five different photographs, each depicting the victim from

29

a different angle and showing a different perspective of the room in which the victim was shot. See ex. 6 to MAR [D.E. # 8-13] 1-5. There is only one photograph providing a close-up of the victim's face, which shows in detail the injury she sustained when she was fatally shot in the eye.

As an initial matter, it appears petitioner has procedurally defaulted this claim. Petitioner could have raised this claim on direct appeal, yet he failed to do so. Petitioner has not alleged a claim of ineffective assistance of counsel based upon counsel's failure to object to the admission of photographs as prejudicial–indeed counsel did raise such an objection, see Trial Tr. 1167–and nor has he raised a claim that appellate counsel was ineffective for failing to raise this claim on direct appeal. Thus, pursuant to N.C.G.S. 15A-1419(a)(3), North Carolina's adequate and independent procedural bar would appear to preclude review of this claim after petitioner's direct appeal and petitioner has alleged no independent claim of ineffective assistance of counsel which could provide "cause" to excuse the default. Nevertheless, it is not clear from the state court's order dismissing petitioner's MAR that the court imposed any procedural bar. Instead, the court found that the MAR "fails to set forth any basis in law or in fact which would entitled Defendant to any relief." Order Denying MAR, ex. 1 to Pet. [D.E. # 1-1]. Accordingly, to the extent this ruling constitutes an adjudication of the merits of this claim, the court must determine whether such ruling survives review under § 2254(d).

To that end, the court first finds that petitioner has failed to allege sufficient facts in support of his allegation that the court unduly admitted "repetitive" photos of the victim to the point of prejudicing the outcome of the trial. As noted above, petitioner has alluded–in his MAR, not in this court–to only five photographs depicting the victim, each from a different vantage point in the room in which she died. As summarized by the state court on direct appeal, there was considerable

30

testimony from different witnesses before the jury about the layout of the apartment and defendant's alleged actions when he entered the room prior to the fatal gunshot. Clearly, photographs depicting the size and layout of the room relative to the location of the victim were relevant and helpful to the jury's determination of the facts about petitioner's actions and how the victim died. As for photos closely depicting the victim's injuries, the court notes that the trial court actually did limit the admission of such photos out of a concern to avoid the sort of "repetition" about which petitioner complains. See Trial Tr. 1172 ("The Court finds that those two–one is a close-up, one is not a close up, but they're both of the decedent and that introducing both would be duplicative and inflammatory, but one would not be either of those. The introduction of one of those would not be either duplicative or inflammatory.").

Given petitioner's failure to point to specific instances in which actual repetitive photos of the victim were introduced, as well as the trial court's obvious sensitivity to limiting the admission of gratuitous depictions of the victim's gruesome injuries, it simply cannot be stated that the admission of the five photographs identified by petitioner in his MAR "so infused the trial with unfairness as to deny due process of law." Estelle, 502 U.S. at 75 (quotation omitted). Thus, the MAR court's rejection of this claim is neither contrary to or an unreasonable application of Supreme Court precedent, nor is it based upon an unreasonable determination in light of the facts before the state court. Ground Six is either procedurally defaulted or without merit pursuant to § 2254(d). Accordingly, respondent is entitled to summary judgment on Ground Six.

G.    Ground Seven

In Ground Seven of the petition, petitioner claims his "conviction was obtained through the perjured testimony of Shawn Taylor." Pet. 15. In support, he alleges "Shawn Taylor's testimony

31

at trial was not the same as he wrote in his initial statement to police officers or what was wrote by detectives in the investigative reports/files, he was permitted to change it to be more convincing to jurors." Id. Petitioner fails to identify in his petition any of these purported discrepancies. In his MAR, petitioner argued as follows:

When Shawn Taylor was questioned by detectives (K. Copeland) on 2/08/08 he did not know what happened, he could only guess, after he was hit with charges, and he rehearsed his story with the district attorney, then he suddenly had all the answers. The information/statement of Shawn Taylor given to me in the discovery of the case, does not compare to the testimony Shawn Taylor gave at trial. He either gave perjured testimony or the State withheld facts/evidence prior to trial, and I was not able to prepare my defense to the facts/testimony and was deprived of due process of law.

MAR, ex. 9 to Resp.'s Supp. Mem. [D.E. # 8-11] 32. Even in his MAR, though, petitioner failed to identify discrete instances of purported perjured testimony on the part of Taylor.

Once again, as an initial matter, and for the same reasons as stated above, it appears this claim has been procedurally defaulted due to petitioner's failure to raise it on direct appeal. More fundamentally, however, the claim is patently conclusory and is, therefore, without merit. Mere discrepancies between a witness's pretrial statements and his sworn trial testimony do not compel the conclusion that the witness perjured himself at trial. Petitioner's argument wholly ignores the likelihood that Taylor lied or attempted to obfuscate when he gave certain statements to investigators.[8] At any rate, a witness's contrary prior statements provide ripe material for impeachment of the witness during cross-examination and closing argument. Counsel for petitioner successfully elicited Taylor's testimony that he withheld information in prior interviews with

---

[8] Indeed, Taylor admitted doing as much when he gave his first statement to investigators in May of 2007, and when he provided information to investigators prior to pleading guilty in January of 2008. Trial Tr. 1076-77, 1099-1100.

32

investigators and was more forthcoming only after he obtained a beneficial plea deal. Trial Tr. 1099-1101. Notably, petitioner has not alleged that counsel was ineffective in failing to expose these inconsistencies between Taylor's prior statements and his trial testimony.

Ultimately, it was the sole province of the jury to assess Taylor's credibility, and it is not a federal habeas court's function to question the jury's determinations in that regard. Counsel adequately elicited testimony illustrating Taylor's incentive to cooperate with investigators and how his cooperation appeared calibrated with events such as his obtaining a beneficial plea bargain and a bond reduction which allowed him to make bail. That petitioner perceives discrepancies between Taylor's pretrial statements and his testimony does not perforce indicate that Taylor perjured himself. Petitioner has failed to substantiate his claim that Taylor committed perjury at trial. Accordingly, his claim that his conviction was the result of perjured testimony is conclusory and without merit, and the MAR court's rejection of the claim is not contrary to or an unreasonable application of Supreme Court precedent, and nor is it based upon an unreasonable determination of the facts in light of the record before the court. Ground Seven is either procedurally barred or without merit pursuant to § 2254(d). Respondent is entitled to summary judgment on Ground Seven.

H.    Ground Eight

In Ground Eight, petitioner claims that his "conviction was obtained due to insufficient evidence." Pet. 17. In support, he argues that "the state failed to proved [sic] the elements of first-degree murder and/or the court's charge to the jury incorrectly defined or instructed the jury as to what must be proved to reach a guilty verdict on the first-degree or felony murder charge." Id.

To the extent this claim is concerned with the sufficiency of the evidence introduced at trial, the court finds, for the reasons indicated in the court's discussion of Ground Three, *supra*,

33

petitioner's broad claim that there was insufficient evidence to support his conviction is without merit and, accordingly, the MAR court's rejection of such claim must be upheld pursuant to § 2254(d). To reiterate, the court is only concerned with "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). In this case, as found by the North Carolina Court of Appeals, there was sufficient evidence at trial for a rational juror to determine petitioner's guilt of the essential elements of the crimes for which he was convicted. Other than lamenting Shawn Taylor's purported "perjury" or the supposed lack of scientific evidence which could conclusively establish that petitioner fired the bullet that killed the victim,[9] petitioner fails to make any specific argument as to why the evidence at trial was insufficient to support his conviction. Petitioner's arguments once again attempt to have this court substitute its judgment for that of the jurors. This is not the function of a federal court in habeas corpus. Petitioner's claim that there is insufficient evidence to support his conviction is without merit and, accordingly, the MAR court's rejection of the claim must be upheld pursuant to § 2254(d).

To the extent petitioner is challenging the trial court's jury instructions, for the reasons stated above, any claim challenging the jury instructions appears to be procedurally defaulted due to petitioner's failure to raise the claim on direct appeal and his failure to allege that the ineffective assistance of counsel provides "cause" for such failure. Moreover, as a substantive matter, petitioner has failed to identify any specific flaw which renders the instructions constitutionally infirm. Thus,

---

[9] Of course, there is no requirement for the sort of evidence which will establish facts to a scientific certainty in order to support a conviction. The State adduced eyewitness testimony at trial indicating that petitioner fired the shot that killed the victim. See, e.g., Trial Tr. 825 (testimony of Martha Ortega). The jury obviously credited such testimony in its review of all of the evidence.

34

any claim challenging the jury instructions is conclusory and is due to be dismissed. Even in his MAR petitioner failed to identify any specific defect in the jury instructions. Instead, petitioner's argument was vague, conclusory, and appeared calculated to place the onus on the MAR court to identify any potential defect:

Because the trial court incorrectly instructed the jury regarding at least one possible underlying offense upon which a theory could be concluded to convict me on felony murder, the court must assume the jury may have based it's [sic] verdict on the theory of which the jury was improperly instructed. . . . A copy of the trial court's jury instructions are attached as exhibit 5 and the defendant request the court to hold a hearing and make findings of fact and conclusions of law as to the instructions on the underlying felonies and the felony murder conviction and defendant asks for the appointment of counsel to investigate and argue this issue to the court. The defendant alleges that the court instructed on a broad spanse [sic] of felonies for the jury to pick from, and in the course of doing so, committed reversible error. In my case, there is no proof that I could have been found guilty of one or all of the underlying felonies, or which felony the state was saying the Defendant committed, so it was virtually impossible to determine what felony the jury used to convict me of felony murder, or if all 12 jurors used the same felony to reach their conclusions.

MAR, ex. 9 to Resp.'s Supp. Mem. [D.E. # 8-11] 36-38. Contrary to petitioner's argument, the jury's verdict makes perfectly clear upon which underlying felony it relied in convicting petitioner of first degree felony murder. The verdict form demonstrates that the jury found petitioner guilty of first degree murder "In Perpetration of Felony Breaking and Entering with the Intent to Commit Extortion." Verdict, Record on Appeal at 109, ex. 3 to Resp.'s Supp. Brief [D.E. # 8-5]. Because petitioner has failed to identify any specific flaw with the court's instructions as to this or any other charge referenced on the verdict form, his claim that the court's instruction denied him due process is without merit. Accordingly, the MAR court's rejection of this claim must be upheld pursuant to § 2254(d). Respondent is entitled to summary judgment on Ground Eight.

IV.     Certificate of Appealability

35

Having determined that respondent is entitled to summary judgment and the petition is due to be dismissed, the court must now consider whether petitioner is entitled to a certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court likewise is debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

After reviewing the petition in light of the applicable standards, the court finds that reasonable jurists would not find the court's treatment of the petition debatable or wrong and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the reasons stated above, respondent's motion for summary judgment [D.E. # 6] is GRANTED and the petition is DISMISSED. The court DENIES a certificate of appealability. The clerk of court is DIRECTED to close this case.

SO ORDERED. This the _1⁄8_ day of March, 2013.

James C. Fox

JAMES C. FOX
Senior United States District Judge

36